UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff*,<br><br>v.<br><br>WILLIAM LIEBERMAN,<br>    *Defendant*. | No. 3:17-cr-00096 (JAM) |

**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

William Lieberman is a prisoner of the Federal Bureau of Prisons ("BOP"). In light of the ongoing coronavirus pandemic ("COVID-19"), he moves under 18 U.S.C. § 3582(c)(1)(A)(i) to amend his sentence to time served with a period of home confinement. I will deny the motion.

BACKGROUND

On July 13, 2018, I sentenced Lieberman principally to 84 months of conspiracy to commit mail and wire fraud and 60 months for tax evasion to be served concurrently following his guilty plea. Doc. #45. I ordered restitution of $5,301,694 on the conspiracy to commit mail and wire fraud and $436,235 on the tax evasion charge, to be paid upon his release. *Ibid.* Lieberman has served less than half his full sentence and is scheduled to be released from BOP custody in July 2024.

Lieberman is 44 years old. Doc. #72 at 4. He states that he has hypertension and a "weakened immune system [which] has manifested itself in several diagnoses throughout his lifetime…[including] E[]rythema Multiforme Arthritis (skin lesions) and Angioedema (swelling that occurs beneath the skin)…Arthralgias (joint stiffness) and Urticaria[] (hives)." Doc. #66 at 7-9. As evidence of his weakened immune system, Lieberman offers a letter from his former primary care physician that confirms that Lieberman has been diagnosed with those conditions

1

and in connection with arthritis treatment had a positive Anti-Nuclear Antibody ("ANA") test that "supports the Immune nature of the disease and the possible rheumatoid associations." Doc. #61 at 13. The positive ANA test is included as an exhibit. *Id.* at 12. Lieberman's BOP medical records reflect that Lieberman has suffered from intermittent angioedema. Doc. #74 at 9. Lieberman's hypertension is confirmed by BOP medical records. Doc. #68 at 1.

Lieberman is currently incarcerated in the Federal Correctional Institution Miami ("FCI Miami") in Miami, Florida. At the time of this ruling, FCI Miami reports 82 active inmate COVID-19 cases and 28 active staff cases.[1]

On May 11, 2020, Lieberman filed a *pro se* motion for compassionate release with this Court. Doc. #58. I denied the motion on the ground that Lieberman had not exhausted administrative remedies. Doc. #60. On May 18, 2020, Lieberman submitted to the warden a request for compassionate release, which the warden denied. Doc. #61 at 4-6. On September 21, 2020, Lieberman filed a renewed *pro se* motion for compassionate release, Doc. #61, and his counsel subsequently filed a supplemental memorandum in support. Doc. #66. The Government opposes Lieberman's motion. Doc. #72. The parties do not dispute that Lieberman has now properly exhausted his administrative remedies.

## DISCUSSION

Federal law—18 U.S.C. § 3582(c)(1)(A)(i)—allows a court to grant a prisoner's motion for sentence reduction if there are "extraordinary and compelling reasons" to do so. *See generally United States v. Brooker*, 976 F.3d 228, 231-34 (2d Cir. 2020) As relevant here, the statute directs courts to consider the following issues before granting any motion for sentence reduction. First, a court must consider where the prisoner has satisfied the statute's mandatory

---

[1] *See* Federal Bureau of Prisons, COVID-19 Cases, available at https://www.bop.gov/coronavirus [https://perma.cc/WD3S-WQ4Q] (last accessed January 7, 2021).

exhaustion requirement. Second, a court must consider whether there are extraordinary and compelling reasons that might warrant a sentence reduction, such as a grave threat to a prisoner's health if he remains imprisoned. Third, notwithstanding any such extraordinary and compelling reasons, a court must consider whether in its discretion a sentence reduction is warranted in light of the purposes of sentencing under 18 U.S.C. § 3553.

Although there is no dispute that Lieberman has now exhausted administrative remedies, I am not convinced that he has established that the threat to his health from COVID-19 is severe enough to constitute an extraordinary and compelling reason for a sentence reduction. There is no doubt that the COVID-19 pandemic is extraordinary, having killed more than three hundred fifty thousand people in the United States in recent months. And I acknowledge that Lieberman has health concerns due to his high blood pressure and diagnoses of autoimmune disorders. But Lieberman fails to show that his various health issues place him at an appreciable risk of contracting COVID-19, much less that he is particularly vulnerable to the virus's most lethal effects.

Lieberman argues that his weakened immune system, the use of the corticosteroid prednisone to treat his autoimmune disorders, and his hypertension place him at increased risk of severe illness from COVID-19. Doc. #66 at 7-9. He provides evidence of ongoing hypertension while in BOP custody, for which he has been prescribed medication. Docs. #69 at 1, 4. His BOP medical records do not list all the autoimmune disorders from which Lieberman allegedly suffers, only reflecting that he has experienced angioedema flareups. *Id.* at 1. But Lieberman reports that his angioedema is controlled with prednisone or antihistamines, Doc. #74 at 9, and offers no evidence that his hypertension is not effectively treated with the prescribed medication. Moreover, according to the Centers for Disease Control ("CDC"), people with hypertension or a

weakened immune system from immune deficiencies or the use of corticosteroids "*might* be at an increased risk for severe illness from COVID-19," but people with those conditions are not in the category the CDC states "*are* at increased risk of severe illness from COVID-19." [2] The CDC states that the only immune condition that puts people at increased risk for severe illness from COVID-19 is a weakened immune system from a "solid organ transplant," and not from Lieberman's diagnoses of skin lesions, angioedema, joint stiffness, and hives. Although it is concerning that there are many active COVID-19 cases at FCI Miami, Lieberman has not shown that the risk he personally faces from COVID-19 while imprisoned is enough to constitute an extraordinary and compelling reason for his release from imprisonment.

I have also considered all of the sentencing factors under 18 U.S.C. § 3553. Lieberman pled guilty to conspiracy to commit mail and wire fraud and tax evasion. He was one of the leaders of a "pump and dump" scheme to defraud investors. As the officer of several publicly traded companies, he lied to investors in public filings, on the telephone, and in face-to-face meetings. Over the span of five years, Lieberman illegally gained approximately $1,198,894.79 from the scheme and evaded payment of more than $400,000 in income taxes. The total loss resulting from the scheme was approximately $18,789,364 to 12,764 victims.

Before sentencing, the Government received impact statements from over 800 victims. Many of these victims have now voiced their objection to his early release. *See* Doc. #72 at 8-9. Although the steps Lieberman has taken towards his rehabilitation while incarcerated are commendable, the purposes of sentencing—including just punishment and deterrence—would

---

[2] Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), " People with Certain Medical Conditions, last updated December 23, 2020, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/R27U-V947] (last accessed January 7, 2021).

not be well-served if he were released at this time with about half of his sentence remaining to be served.

## CONCLUSION

For the foregoing reasons, the Court DENIES the motion of defendant William Lieberman for compassionate release. Doc. #61.

It is so ordered.

Dated at New Haven this 7th day of January 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge